Huitín, Chief-Justice
 

 The deed of
 
 Hammonds
 
 passed to the defendant, at the least, the title to one . moiety of the premises in dispute. Whether under the aC^
 
 (Bev. C.
 
 204, § 6,) it passes
 
 the whole
 
 as contended by the counsel for the defendant; or whether tlie J°int business of those persons, is such trade, com-mcrcc, work, or manufacture, as is within the act; or Aether the .purposes must appear in the deed, or arti*-des of copartnership, or may be otherwise shown; arc questions of such magnitude, as to prevent the Court from expressing an opinion on them, without full deliberation, and until it shall be called for, -as indispensable to the decision of a cause.
 

 The deed of
 
 Dolphin Anderson
 
 to the defendant, was made before process sued in any of the actions stated in the record, and is effectual to "vest in the defendant one undivided half part of the other moiety; which, for the purposes of the present case, is supposed to have descended from
 
 Alhelston Anderson.
 

 The question is thus reduced to this; which of the parties has the better title to the remaining fourth part, winch descended to the two infant heirs, the children of a deceased brother of the intestate?
 

 His Honor then stated the facts as above and proceeded as follows:
 

 The argument for the plaintiff is, that the plaintiffs
 
 *131
 
 under whose executions lii's lessor purchased', had liens prior to that created
 
 by'Ricks’
 
 judgment and execution, and therefore that the sheriff’s sale ami deed to him, conveyed the title.
 

 At common' Law a judgment is an absolute lien upon land so long as an
 
 elegit
 
 can issue upon it, and that writ displaces all alienation posterior to the judgment including extents under junior judgments*
 

 But the rule-as to chattels is different, they are bound only from the
 
 teste
 
 of
 
 the fi.fa.
 

 And
 
 the ji. fa.
 
 first executed has. the preference..
 

 It is undoubtedly the principle of the doctrine ofli'en, that it gives a preferable right of satisfaction out of the thing bound by it, unless it be lost by the laches of the person entitled to it, or in itself is defective as against some other person, whose rights and acts discharge the' subject from it. If the lien be absolute, and extend to all persons,. the property is. bound by it conclusively, and into whose hands soever it may go, it is.cum onere. Such is in England, the effect on lands, of a judgment on which an
 
 elegit
 
 can be issued. It binds the land against alienation by the defendant, and also.adheres to it in preference to a subsequent' lien created by a second judgment, on which execution had been executed; provided the first judgment creditor be not guilty of laches. It is not there held to be laches, for the creditor in the first judg ment to withhold his execution, until another creditor has extended the land. The. lien is lost only by such delay as prevents the issuing of the
 
 elegit
 
 at all. When thus displaced a second judgment creditor can safely proceed on his. But the lien on chattels is very different. The judgment creates none against any body: and the execution forms a lien, differing in its original continuance, as against different persons. Against the debtor himself and his alienees, at common law theji.
 
 fa.
 
 operated from its test, so as to avoid an alienation ; and this, not only in favor of the writ, of which the test was. anterior to the alienation, but of those issued subsequently, provided they purported to be founded on the first, and to be in continuation of it. But between creditors, the first lost his lien, or rather, never acquired it, if lie delayed suing execution until, as some suppose, another creditor had sued his, and delivered it to the officer; or, as others suppose, until the second had his executed; and even if the first sued execution, and delayed proceeding on it, his lien was dislodged in favor of the lien of a .junior execution diligently acted on. These observa
 
 *132
 
 tions do not apply directly to the question we are considering; but they are nevertheless considered useful as tending to a clearer understanding of what is meant by the term
 
 lien,
 
 in reference to the rights of the general-owner of the subject to which a lien attaches, and of the rights of several persons asserting distinct and conflicting liens on that subject.
 

 As to the heir, & purchasers under him, the real assets are bound tlfe?formcr?SainSt
 

 purchaser wider judgments in all respects junior to the process thus issued, the rale ought to be different.
 

 For an
 
 elegit
 
 in displacing an extent made under a junior judgment, does nothing but postpone the satisfaction of the latter.
 

 .But it is Wise if the title of a purchaser under a
 
 fi. fa.
 
 upon a junior judgment is divested by a sale under an elder.
 

 It is here insisted, that the creditors under whose executions the lessor of the plaintiff purchased, had the pri- or liens; first, from suing the first process; and if not, then secondly, from obtaining the first judgments.
 

 It is granted, that as against the heir, and a purchaser from him by the third section of the act of 1789,
 
 (Rev.
 
 c. 311,) (which is in affirmance of the common law,-) the *an(^ is bound from the bringing of the action; and
 
 a for-tiori by
 
 judgment rendered. But whether one judgment binds it in like manner, against another judgment and execution sued thereon, is a different question, and de-pent{s Up0n different principles. If enforced by
 
 elegit,
 
 the judgment is a lien on one half of the lands which the debtor had at the time it was rendered, by statute of Westminster 2 (c. 18.) and a judgment against the heir on the bond of the ancestor, was at common law, against all the lands descended, of which the heir was seised at the time of action brought.
 
 (Harbert’s case,
 
 3
 
 Co. Rep.
 
 12.) But in all these instances there was no sale of the land. The creditors themselves are put into possession, to hold until their debts shall be satisfied by the annual value assessed upon inquisition. If a creditor under a junior judgment have the first extent, he is not injured by yielding to the preferable lien of a prior judgment; that is, he does not lose his debt. His satis-is postponed ; that is all. When he who has ,, „ . .. „ , , the preference is satisfied by perception of the profits, the other may enter again. Not so when the execution commands a sale out and out. The interest of third persons, purchasers, must then be considered. If dormant liens can be asserted against them, and enforced by sale, their purchase money is a total loss. Hence, while it was admitted in this State, that lands were
 
 *133
 
 bound by judgment, notwithstanding tlie statute, 5
 
 Geo. II.
 
 (c. 7.) gave the writ of
 
 fi. fa.
 
 against them, it was yet only held, “that it Was in this wise only — it hinders the debtor from disposing of the land himself; but if a
 
 fi.fa.
 
 issue upon a subsequent judgment, and the sheriff sell the lands under it, the title of the vendee cannot ever afterwards be defeated — it is valid for every
 
 purpose,”
 
 — (Den
 
 on dem. Bell
 
 v.
 
 Hill, 1 Hay. Rep. 72,
 
 95.) The question was most elaborately argued in that case, and the whole learning and law of the lien of a judgment and
 
 elegit
 
 pressed on the court; and the question was betweecn persons claiming as purchasers under an elder and a younger judgment, and decided in favor of the latter, upon the sole ground, that he was the first purchaser. Since that day the rule then laid down has never been questioned, as far at least as respects the title of the purchaser. Upon the principle of that case, and the words used by the court, such a purchase would be sustained, although a writ of
 
 elegit
 
 should afterwards issue on the prior judgment. The title, it is declared, passes to the first vendee, and cannot ever be defeated, hut is valid for every purpose.— If the necessity of supporting sales, upon the ground that otherwise none will buy under execution, as derived from the operation of executions on chattels, induce the courts to apply the same rule to sales of land to one purpose, it might be expected to do so to every one. The interest of the first purchaser should be as much protected against the disturbance of an
 
 elegit,
 
 as against eviction by a subsequent absolute sale. If this be true, it would seem to follow, that thestatute of
 
 Geo. II
 
 altered the law, not only by giving a new writ
 
 oí fieri facias
 
 against lands, but by abolishing the former execution by
 
 elegit,
 
 or at least impairing the ancient operation as against a junior judgment. The question has never arisen in the courts of this State, for if the right of the
 
 elegit
 
 still exists here, it has very rarely been acted on. I have never known or heard of that writ being actually sued. In
 
 Jones v. Emmonds,
 
 (3
 
 Morph.
 
 43,) it seems to be taken for granted that it may be resorted to ; and if it be, that it binds
 
 *134
 
 the lands of which the defendant was seised at the time of the judgment. This observation was entirely incidental and not relevant to the point to be decided. It likewise leaves it as a question, against whom does it so bind ? is it the party and a purchaser from him ? or is it another judgment creditor and a purchaser under his
 
 fie-ri facias?
 
 The decision of those questions is not called for in this
 
 case;
 
 as neither of theseparties claim under an
 
 de-git.
 
 The case
 
 of Jones
 
 v.
 
 Edmonds
 
 does however conclusively establish.thatthejudgmcntas such does not bind land, and iftheplaintiff sues a
 
 fieri facias,
 
 the land is bound, as chattels, by the writ of execution, and by that, alone ; and this as against a purchaser from the debtor. Much more strong is the claim of the purchaser under another execution. There is another case
 
 in
 
 which the effect of a purchase at sheriff’s sale, as displacing a previous lien there acknowledged to exist, is exhibited in a remarkable manner. In
 
 Green
 
 v.
 
 Johnson,
 
 (2
 
 Hawks
 
 309,) the majority of the court held, that
 
 a fi.fa.
 
 of older test,shall be satisfied
 
 before
 
 a younger one first delivered to the sheriff, contrary to what had before been generally understood to be tbe law. But it is unequivocally admitted by both of tbe Judges who made that decision, that the purchaser had at all events a good title to the land, and also that the creditor in the execution of the later test, should retain the money if paid over to him by the sheriff, although such payment and sale had been since tbe test of the older writ, but before its delivery.
 

 
 *133
 
 The case of
 
 Den
 
 v.
 
 Hill,
 
 (Í
 
 Hay.
 
 73.) approved.
 

 Prom that casé, and from tho necessity of protecting sales of land ■under
 
 fi. fa.
 
 it seems clear that an extent will
 
 nol
 
 in this state, divest the title of a purchaser under a junior judgment.
 

 Andifsoit follows necessarily, that the statute 5th
 
 Geo. JJ.
 
 subjecting land to sale under a
 
 fi.fa.
 
 abolished the execution by
 
 elegit.
 

 The case of
 
 Jones'r.Edmonds,
 
 (3
 
 Murph.
 
 43,) commented upon and approved in-part.
 

 
 *134
 
 The case of
 
 Greenv. Johnson
 
 approved!8’ 3°9’)
 

 Tn this state the rules of the common law as to the lien of
 
 afi.fa.
 
 upon chattels, has been extended to land when sought to be subjected by that writ.
 

 And after the gale of land under
 
 one fi.fa.
 
 the lien of another is regarded only in questions as to the application of the money raised by the sheriff.— In all cases the title of the 'purchaser-is protect cd.
 

 From this train of decisions, it is apparent, that the rule of thccommon law as to the lien on personal chattels by the
 
 fieri facias
 
 is completely incorporated into our law, regulating the lien upon lands, when proceeded against by the same writ. It is true that the creditor in the prior execution is frequently postponed, upon the ground of a fraudulent or negligent delay, to a creditor In a junior execution, who adopts the straightforward course of selling immediately. But that question is necessarily confined to cases in which the officer has both executions at the day of sale, and to a contest between the creditors, or with the sheriff for the money. As to the continuing lien of
 
 *135
 
 the judgment and execution on the property itself, after a sale upon another execution, the great and moving consideration with the courts is, the protection of the purchaser. This is not founded merely upon the rights of the creditor under whose execution he purchased, as being entitled to the first satisfaction, because he first delivered his writ. The rule was the same long before the statute, 29 Car.
 
 IT;
 
 and rests upon public policy, that purchasers at sales under process of the law should be safe, because they get no covenants on which they can rely. It is so laid down by
 
 Lord Holt
 
 in
 
 Smallcomb
 
 v.
 
 Buckingham,
 
 (1
 
 Ld.
 
 Raym. 251,) and by
 
 Lord Coke
 
 in
 
 Manning’s case
 
 (8
 
 Rep.
 
 9.)
 

 And lie is pro.-tected as well when the writ is against the real assets iu the hands of the heir, as where the de-, fendanlinitis the original debtor.
 

 Does a judgment and execution against an heir differ in this respect from those against persons for their own debts ?
 

 We do not now mean to extend our enquiry beyond the case, into the effect of such a judgment, on which an
 
 ele,git
 
 has been sued,by both or one of the creditors. Both creditors here proceeded by
 
 fieri
 
 facias. The principle is as applicable to this, as to other cases. It is that the first purchaser shall be protected. It is said however, that the writ of
 
 fien facias
 
 against an heir, following the judgment, is express in its mandate to sell the land descend-cd, which the heir had when the original was purchased ; and that in our law, the whole process is strictly and exclusively
 
 in rein:
 
 whereas this execution in other cases, has no reference to the judgment, nor the estate the debtor then had ; but only to its own test; — upon this ground a specific lien is asserted on the lands in the hands of the heir ; which cannot be displaced otherwise than by satisfaction. It is true, there is the difference suggested between the process upon a judgment against the heir, and against one for his own debt. But the inference claimed does not follow. For the relation of the
 
 fieri facias
 
 is, in every case, to its test, and to that extent the lien is as conclusive as that of one against the heir can be on the estate held by him at the time of the judgment or suit against him. Yet we have seen that the lien of
 
 thaji.fa.
 
 has not vigor to stand against a sale, poste.-
 
 *136
 
 rior to its
 
 test, under
 
 a
 
 junior
 
 execution executed.
 
 There
 
 is nothing then in the terms of the judgment ol-
 
 execution;
 
 for they cannot be more effectual to this end than the Ji.
 
 fa. is
 
 by operation of law, as far as that operation is retrospective, The question recurs in each case, what alienation is to be overreached by it ? To me it seems that every reason upon which, in any case, the law strips the lien of an execution from property sold under another execution, equally demands it in every case.
 
 Ordinarily
 
 the creditor in the first judgment may obtain the first execution. If the right to the first satisfaction does not depend upon the commencement of the suits, it is the fault of him who gets the first judgment, and his fault only, that he docs not get immediately the fruit of his judgment by execution,- and if he stands by, until another sells upon a judgment for a debt against his deceased debtor, he ought not to fare better than if the debtor were a living one.
 

 The case of tlie
 
 JBanh of jSfetvbevn
 
 v* Stanly,
 
 (~ante 2 vol, p. 4-76,)
 
 approved.
 

 The opinion of Hendehsos, Chief-Justice, that the
 
 proviso
 
 
 *137
 
 to tlie last section of the act of 1789, whereby executions against infant heirs are stayed, appliesonlywhere the guardian has sold property of the infant to pay the debt, is probably correct.
 

 
 *136
 
 In the
 
 Bank of Newbern
 
 v.
 
 Stanly
 
 and
 
 Jones, (ante 2 vol.
 
 p.
 
 476,)
 
 it was not intimated at
 
 the bar,
 
 nor surmised by the court, that the creditors had liens referable to the date of their judgments, or the commencement of their suits. It was understood on all sides, that the preference depended upon the executions. Both judgments were there rendered at the same term, and it did not appear which creditor first took
 
 process
 
 against the heir. Consequently if there had been a lien independent of that by execution, all the rules must have been discharged at once. But the rule on the clerk to issue the execution of the Bank was made absolute.
 

 But it is urged here that the creditors were not guilty of laches, for the execution was staid by the law, and was sued out as soon as the party could.
 

 It is assumed in that position,
 
 that the act
 
 of 1789 prohibits the issuing an execution against heirs, of whom one is an infant. The contrary was decided in
 
 Bank of ATevubern
 
 v.
 
 Stanley
 
 and
 
 Jones, (ubi supra;)
 
 and as
 
 Dolphin Anderson
 
 was an ad.ult, the plaintiff might, and therefore ought to have sued out his writ, and delivered . . it to the sheriff, which would have given notice
 
 to other
 
 
 *137
 
 creditors and purchasers of his prior lien, But as
 
 Dolphin Anderson
 
 was not served with process, and for that rea-sonthe judgment may be considered a nullity as against him, it would remain to be inquired, whether the act of 1789 does direct a suspension of execution generally against infant heirs. In the case just cited, Chief-Justice Hen-deusoN expressed the opinion, that the
 
 proviso
 
 in the last section was to be restrained to cases where a guardian had sold the estate of the infant, as provided for in the previous ]jart of the section. The construction generally received however, has been, that all cases of judgments on
 
 scire facias
 
 against infant heirs are embraced
 
 ;
 
 and that it was intended to give the guardian an opportunity of selling his wards estate after the
 
 scirefacias
 
 sued, of which the guardian would have notice by service on himself. To this opinion upon consideration of the whole act, I confess my mind inclines ; though I am by no means confident: For the act is so badly framed, that any construction must be but conjectural, at best.
 

 But at all events that
 
 proviso
 
 extends only to judgment upon a
 
 sci. fa.
 
 not to those in debt upon the bond of the ancestor.
 

 ' Yet this is certain :. That it is not a general provision, extending to all suits against infant heirs, but only to those by
 
 scire facias.
 
 The words so limit it. There was no reason for the provision, in respect to the action of debt; for by the common law a larger and much more beneficial privilege is given to an heir within age, that of pleading his non-age, and praying the parol may demur.
 

 The creditor by judgment on
 
 scire facias
 
 has no just cause of complaint against the law, if he lose a preference which he might have from mere priority of judgment, by the suspension of his execution by operation of law. If his debt be due by specialty in which the heir is bound, he has his choice of the remedies at the common law, and under the
 
 statute;
 
 and it is his own fault to elect that one, on which he cannot have immediate execution. If the debt be one which can only be recovered, from the heir under the statute, he must take the remedy thereby given, with all its imperfections and inconveniences. The Legislature intended to give additional remedies against heirs, and not to take away those before
 
 *138
 
 existing ; and it is not unreasonable that a creditor who is seen, from the terms of his contract, to have looked originally to the heir, should have the benefit of his higher security. There is nothing to restrain such a creditor from selling; and if he does sell, the purchaser ¿for the reasons already given, acquires a valid title.
 

 . ' is othing but a ■writ in debt, or a
 
 fa.
 
 is -‘an process sued” mMo^resnaüí alicnation by an heir.
 

 But it is insisted, that the lien is to be carried even farther back than the judgment; to the commencement of a suit; under the third section of the act of 1789.
 

 To this it may be answered, in the first place, that if this were true, it would not help the plaintiff. The case states that
 
 David Ricks
 
 commenced his action of debt on the 7th day of March, 1827. The plaintiffs under whose execution the lessor of the plaintiff claims, issued writs of
 
 scire facias
 
 returnable to May term of the County Court, which of course bore test of the preceding February term. But it does not appear when they actually issued. The words of the act are,
 
 “
 
 action brought, or process sued out against the heir or devisee,” which certainly refer to the day of issuing, and not that of the test of the writ. Nor can the issuing of the execution by a justice of the peace be regarded as process cither against the land or the heir, for this purpose — it is impossible to suppose that it was intended that purchasers from tiie licit' were bound to take notice of all executions against the executor, for which the land might ultimately be rendered liable in the hands of the heir. Such are executions generally, which arc issued by justices of the peace for the debt of the ancestor ; and those rendered in court, whore the executor lias failed to plead fully administered or has become in- , , . , solvent 1 lie suit which arrests the alienation of the >;cn, is one “ against
 
 him
 
 or
 
 her,”
 
 that is, the heir ; and the process is intended to be such as calis in the heir personally, to defend the land ; which description no oth- or will answer but a writ in debt, or a
 
 scire facias
 
 against the heirs, either under the acts of 1784 or of 1794.
 
 (Rev. chs.
 
 226 and 414.)
 

 • But if the process of that kind had been first issued and served in the suits, under which the title of the plaintiff is derived, it seems to us that it would have
 
 *139
 
 made uo difference. The ease of
 
 Irwin
 
 v. Sloan,
 
 (ante
 
 4
 
 vol. p.
 
 349.) is an authority to this point. That case has been questioned in the discussion of the present; and as it was a decision without argument, the court has been asked to review it, and lias done so, but with-
 
 on t
 
 perceiving any error in it. It accords with the
 
 •Anonymous case
 
 (1
 
 Mod.
 
 253.) in which it was held even in England, that as between creditors, the first judgment, and not the first suit gave the preference. The case of
 
 Gree
 
 v.
 
 Oliver (Carth.
 
 245) lays down a contrary rule, and denies the previous case in terms. But the case itself did not call for, and therefore did not warrant the expression of such an opinion. The creditor who sued last there, but got his judgment first, took it generally against the heir, and sued execution as for the debt of the heir, against the half of all the lands of the heir. The other creditor, whose suit was prior and judgment subsequent, took his judgment against the lands descended. He ought not to be barred by the proceedings of the other creditor, more than if he had not been a creditor of the ancestor, but of the
 
 heir;
 
 and it is not denied that the lands descended must satisfy the debts of him from whom they descend, before a debt of the person to whom they descend can, touch them, because the property of every man must an-swerhis own debts,before they can bcapplied to any other purpose. Whatever then may be the law of England upon this question, the case of
 
 Gree
 
 v.
 
 Oliver
 
 is not one which establishes it. But it may be admitted to bo good law there, Without over-ruling
 
 Irwin
 
 v.
 
 Sloan.
 
 That case was decided upon what was then conceived, and is now thought to be the settled law in this State, that the first execution finally acted on, was effectual, both for the benefit of the purchaser under.it, and the creditor in it. The execution in favor of which the court decided, and under which the money was raised, was issued from May to August term, and the sale made, before
 
 Irwin
 
 obtained judgment, which was at August. He then claimed that the money should be applied to his judgment, rendered at that term, upon the ground that h.is
 
 *140
 
 execution created a lien. The court held that it did not, because it was not execution against the land. But the opinion went further, to say, that process against the ]ie¡r creates a lien only as against the heir and purchasers from him, but not as against another creditor.• — ■ It was thus stated, upon the effect which the adjudged e j ¿ ¡riven to executions here: in obedience to ° which the money was awai'ded to that under which it was ril*se^- ^or it would seem absurd to say, that a judgment is not binding upon a subject, but that the process, upon which that judgment is founded, is. For the reason why the land is bound from the commencement of the action (in cases when it is bound) is, that the judgment, in terms, is against the land of which the lieir was seised at the time of process sued. This, as a judgment, if a
 
 fieri facias
 
 bo issued, does not overleap a sale under a junior judgmeut. A
 
 fortiori
 
 the period of commencing the suit, cannot impair the force of an execution on a prior judgment. The alienation meant in the act of 1789, is that by the heir, and not one by a sale under execution against the land in his hands as heir; for he is made liable personally for the value of the land aliened, as therein meant, and that cannot, therefore, be a sale under execution for his ancestors debt. ' To the value of lands sold by him he is to be answerable for debts | and the creditors are in such case, to be preferred as in actions against executors. Whether this preference is to be determined by the dignity of the debts, or by the period of suing, is immaterial to the question now under consideration. If the former, it would strengthen the case of the defendant claiming under a judgment in debt, on the bond, against a judgment on
 
 scire facias,
 
 which may be for a simple contract debt. But supposing the latter to be the correct construction, it leaves in full
 
 force the
 
 principle of our decision; because it operates upon the heir personally and alone, for the money received by him, and no purchaser of the land is displaced.
 

 
 *139
 
 The case of
 
 ir-
 
 v.
 
 Sloan,—
 
 349^ approved^'
 

 la this state the nlny“tedonpro toots both the pur-the piainttff in *
 

 
 *140
 
 Process against an heir creates a lien upon the real assets only as to him and purcha-no? asdtoother creditors.
 

 Upon the whole therefore, the court is of opinion that there cannot be judgment for the plaintiff, without over-
 
 *141
 
 Tilling many cases adjudged in tins state, and disregarding the reasons upon which they rest. We are aware that in several of the States, as New York and Maryland, for example, the statute of
 
 Geo. II.
 
 has received a different .construction, and it is held, that the judgment yet creates the lien, although the process of execution be by
 
 fierifacias;
 
 and consequently, that the elder judgment shall be satisfied, although a sale has been made under a younger. But this consequence can only take place where the judgment does create a lien
 
 ;
 
 and there have been too many decisions upon that point in this State, for us, at this day to consider it open. If the judgment he not a lien, our conclusion seems to follow necessarily. Consequently the judgment must be affirmed.
 

 Per Curiam — Judgment aeeirmed.